IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN R. SCOTT,

        Plaintiff,

vs.                                              No. CIV 03-0672 WDS

JO ANNE B. BARNHART, Commissioner
of the Social Security Administration,

        Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing filed on December 8, 2003. Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that Plaintiff was not eligible for disability insurance benefits or supplemental security income. The Court, having considered Plaintiff's Motion [docket # 12] and Memorandum Brief [docket # 13], Defendant's Response [docket # 14], Plaintiff's Reply [docket # 15], the administrative record and applicable law, finds that Plaintiff's Motion should be **DENIED,** and that this matter should be dismissed with prejudice.

### I.  Background

Plaintiff, who was born on January 25, 1957, worked as a maintenance man, construction laborer, and service station owner, Tr. 91, before the onset of his alleged disability. Plaintiff underwent triple bypass surgery following a heart attack, and he alleges that he continues to suffer fatigue. He suffered a broken back in 1999 and alleges continuing back pain. He also has been diagnosed with type II diabetes and hypertension, and is hard of hearing.

Plaintiff filed his initial concurrent application for disability insurance benefits ("DIB") under Title II and XVI of the Social Security Act on April 27, 2001. Tr. 76-79. Plaintiff alleged that he

became unable to work as a result of his disabling conditions on March 30, 2001. Tr. 76. After Plaintiff's application was denied at the initial level, Tr. 54-57, and at the reconsideration level, Tr. 60-63, Plaintiff appealed by filing a request for hearing by an administrative law judge ("ALJ") on February 25, 2002, Tr. 64-65.

The hearing before the ALJ was held on July 23, 2002, at which Plaintiff appeared and was represented by an attorney. Tr. 26-51. Plaintiff alleged that he was disabled primarily as a result of back pain and fatigue. Tr. 42, 45. Plaintiff is being treated for hypertension, Tr. 44-45, and has diabetes that is controlled with diet. Tr. 48. Plaintiff is also hard of hearing. Tr. 45, 49. In a decision dated December 9, 2002, Tr. 7-16, the ALJ denied Plaintiff's claims for DIB and SSI. Plaintiff then filed a request for review with the Appeals Council on February 11, 2003. Tr. 6. The Appeals Council denied Plaintiff's request for review on April 4, 2003, Tr. 4-5, and thereby rendered the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). *See* 20 C.F.R. §§ 404.981, 416.1481

On June 4, 2003, Plaintiff filed this action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). Both parties consented to having this case reassigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [docket #4 and #5]

## II.  Standard of Review

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir. 1993). In determining whether the Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the

2

evidence, nor should it substitute its judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994). Instead, the Court should meticulously examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1993). The "substantial evidence" standard is satisfied by more than a scintilla, but less than a preponderance, of evidence. *Id.* However, evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989).

A sequential five-step analysis applies in determining whether an adult claimant is disabled and entitled to benefits under the Social Security Act. *See Williams,* 844 F.2d at 750-52; 20 C.F.R. §§ 404.1520, 416.920. First, the question is whether the claimant is engaged in substantial gainful activity. *Williams,* 844 F.2d at 750. If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At the second step, the question is whether the claimant has an impairment or combination of impairments that is severe. *Id.* If not, the claimant is not disabled; however, if the claimant makes the required showing of severity, the analysis proceeds to step three. *Id.* at 750-51. At step three, the question is whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed Impairment"). *Id.* at 751. If so, the impairment is considered to be presumptively disabling. *Id.* If not, the analysis proceeds to step four, where the question is whether the impairment prevents the claimant from doing past work. *Id.* The claimant is not disabled if he or she can perform past work. *Id.* If the claimant cannot perform past work, the analysis proceeds to step five, where the burden shifts to the Commissioner to establish that the claimant has the residual functional

capacity ("RFC") "to perform other work in the national economy in view of his age, education and work experience." *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)). The claimant is entitled to benefits unless the Commissioner establishes that the claimant can "perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984)).

### III.  Summary of the ALJ's Decision

At step one of the sequential five-step analysis, the ALJ found that Plaintiff's work activities were very near the threshold to be considered as substantial gainful activity. However, the ALJ gave the plaintiff the benefit of the doubt and found that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. Tr. 11. The ALJ found at step two that Plaintiff has severe impairments of heart disease and back pain, but found at step three that Plaintiff's impairments are not severe enough to meet any of the Listings. Tr. 12. The ALJ found that Plaintiff's other maladies, non-insulin dependent diabetes and high blood pressure, were controlled with medication and did not approach Listings-level severity. Tr. 13. Similarly, while Plaintiff related that he had a "stroke" in 1986, the ALJ found, as did the Plaintiff's doctor, that Plaintiff had suffered a transient ischemic attack, that the symptoms cleared within 5-6 hours, and that the Plaintiff had no subsequent episodes. Tr. 12.

At step four, the ALJ concluded that Plaintiff retains the residual functional capacity to perform substantially all of the exertional requirements of a full range of light exertional level work. Tr. 14. Given this RFC assessment, the ALJ found that Plaintiff could not perform his past relevant work as a maintenance supervisor. Tr. 14. However, at step five the ALJ concluded that there were a significant number of jobs in the national economy that Plaintiff could perform. Tr. 15.

Plaintiff contends that the ALJ erred by making conflicting evaluations of the credibility of the Plaintiff, and by failing to order consultative evaluations for Plaintiff's mental condition and hearing complaints..

## IV.  Discussion

### 1.  Did the ALJ Commit Error By Making Unfavorable Determinations of the Plaintiff's Credibility?

Plaintiff alleges that the ALJ committed error by finding Plaintiff's subjective complaints of pain and disability to be not credible.  Plaintiff notes that the ALJ commended Plaintiff on his honesty, Tr. 13, but did not credit the entirety of Plaintiff's testimony.  Further, Plaintiff alleges that the ALJ improperly attributed Plaintiff's failure to seek treatment to lack of symptoms, rather than lack of money.

A two-part inquiry applies in assessing functional limitations that result from pain.  First, the ALJ need not even consider the claimant's subjective pain testimony unless the claimant proves by objective medical evidence that he or she has an impairment that could reasonably be expected to produce pain.  *Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993)(citing *Luna v. Bowen,* 834 F.2d 161, 163 (10th Cir. 1987)).  Second, where a claimant has established by objective medical evidence that he has an impairment that could reasonably be expected to produce pain, the ALJ must consider all of the evidence to decide whether he believes the claimant's allegations about the functional limitations that result from the pain.  *See* 20 C.F.R. §404.1529; *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995).

I find that the ALJ properly determined at step one of this process that Plaintiff had two impairments that could reasonably be expected to produce pain and/or fatigue:  his heart condition

and his back injury. Thus, the question raised by Plaintiff's appeal is whether there is substantial evidence to support the ALJ's step two determination that Plaintiff's testimony about his functional limitations was not fully credible.

### **Fatigue**

Plaintiff underwent bypass surgery in April 2001. On October 25, 2001 Plaintiff was examined by his cardiologist, Michael R. McGuire, MD. Dr. McGuire found that Plaintiff had no edema and did not become severely short of breath with even moderately heavy exertion. Tr. 200. The Plaintiff did not report continued chest pain, and told Dr. McGuire that his energy level was "probably very gradually increasing." Tr. 200. Dr. McGuire wrote in his assessment of Plaintiff that "He has returned to essentially normal activity with some limitations, but overall seems to be doing reasonably well." Tr. 201.

Plaintiff testified that he worked four hours a day at a lumber yard, and had a second part time job securing a vacant commercial property. Tr. 30. He rode a bicycle from one job to another, Tr. 35-36, and would also try to ride three miles a day for exercise. Tr. 37. Plaintiff testified that he was able to assist with household chores on a limited basis, Tr. 37, perform some lawn maintenance, Tr. 47, and tinkered with old vehicles he had on his property, again on a limited basis. Tr. 46.

I find that both Dr. McGuire's statement that Plaintiff has returned to "essentially normal activity with some limitations" and Plaintiff's description of his daily activities constitute substantial evidence to support the ALJ's credibility determination regarding Plaintiff's functional limitations arising from fatigue.

### **Back Pain**

Regarding Plaintiff's back pain, the ALJ found that the Plaintiff worked following his 1999

back injury and that the medical record failed to document ongoing treatment for back pain. On appeal, Plaintiff suggests that the lack of treatment for back pain merely reflects an inability to pay for such treatment. I find that the medical record does not support Plaintiff's allegation that lack of money prevented him from visiting the doctor. Plaintiff did seek treatment from his primary physician, Dr. Raes, for problems other than back pain. On January 28, 2002 Plaintiff saw Dr. Raes with a "chief complaint" of flu. Tr. 246. On that day Plaintiff also had complaints of erectile dysfunction and needed a refill on a prescription for arthritis medication. Tr. 246. Plaintiff testified that Dr. Raes prescribed Celebrex for arthritis in his knees, shoulders and ankles. Tr. 42-43.

On May 10, 2002 Plaintiff presented at the office of Dr. Raes with complaints of left rib pain secondary to a bicycle accident. Tr. 242. Plaintiff also complained that "his allergies are really bothering him." Tr. 242. X-rays were taken of his ribs and shoulder, and he was prescribed medication for both his rib pain and allergies. There is no indication in either record that Plaintiff reported, or sought treatment for, back pain.

On May 16, 2002 Plaintiff sought treatment at Counseling Associates, Inc. The Adult Clinical Screening and Assessment Documentation included the following report of Plaintiff's medical history: "Mr. Scott recently had a triple buy pass (sic) after having a heart attack. He also reports chronic back, knee, and shoulder pain from arthritis. He currently takes Avapro, Luptor (sic) and Celebrex (sic). The medication appears to have stabilized the conditions." Tr. 248.

The medical records cited above rebut Plaintiff's allegation that he did not seek medical treatment for his back due to lack of funds. To the contrary, the medical record in this case supports the ALJ's conclusion that Plaintiff's complaints of debilitating limitations were not consistent with the clinical evidence of record and were not wholly credible. Tr. 13. I find that there is substantial

7

evidence to support the ALJ's conclusion that Plaintiff's subjective complaints of pain and fatigue were not fully credible. It is, of course, fully within the discretion of the ALJ to accept all, part, or none of the testimony of a claimant:

> In making a finding about the credibility of an individual's statements, the adjudicator need not totally accept or totally reject the individual's statements. Based on a consideration of all of the evidence in the case record, the adjudicator may find all, only some, or none of an individual's allegations to be credible. The adjudicator may also find an individual's statements, such as statements about the extent of functional limitations or restrictions due to pain or other symptoms, to be credible to a certain degree.

- SSR-96-7p. Accordingly, I find that Plaintiff's objections to the ALJ's credibility determination are not well taken.

### 2. Whether the ALJ Erred in Failing to Order Consultative Evaluations

Plaintiff alleges that the ALJ should have ordered consultative evaluations to "clarify Plaintiff's mental condition" and to further investigate plaintiff's "hearing complaints." Plaintiff's counsel does not specify the aspect of Plaintiff's "mental condition" that needs clarification, but there are two references to "depression" in Plaintiff's medical record. On October 25, 2001 Plaintiff was examined by his cardiologist, Dr. McGuire. In his "Subjective" assessment, Dr. McGuire stated "He (Plaintiff) admits to some depression, although he says most of the time, he has his attitude under very good control." Tr. 200. The May 16, 2002 records of Counseling Associates, Inc. also contain references to depression. Tr. 248. However, the diagnosis is of an "alcohol induced mood disorder" stemming from Plaintiff's third DWI, the legal consequence thereof, and his wife's threats to leave him if he did not stop drinking. Tr. 248-249. At the hearing before the ALJ, Plaintiff referred to depression only in the context of refraining from drinking:

Q: Okay. Now, you've been--you haven't had a drink in two months. Are you still having a problem with depression?

A: Well, yeah, I guess so. You know, I mean, I think about having a drink every day but then I don't. I just put that thought away, you know, go on to something else, you know.

Tr. 48.

Regarding Plaintiff's "hearing complaints", Plaintiff mentioned in passing to the ALJ that he was hard of hearing. Tr. 29. The ALJ asked Plaintiff a series of questions regarding his hearing, and Plaintiff testified that he had trouble understanding announcements over the loudspeaker at work, and that people had to repeat themselves while talking to him. Tr. 45. There is no indication that Plaintiff had difficulty hearing the ALJ's questions, and no reference to hearing problems in Plaintiff's medical records. Plaintiff's disability application did not mention problems with hearing. Although Plaintiff expressed concern that his back pain and fatigue might make it difficult for him to continue working at May's Lumber, Tr. 47, he gave no indication that his hearing problems threatened his employment.

The Commissioner has a broad latitude in ordering consultative exams. See *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (citing *Diaz v. Sec. of Health & Hum. Servs.*, 898 F.2d 774, 778 (10th Cir. 1990). An ALJ should order a consultative examination when the record establishes a reasonable possibility of disability, and the result of such an examination could be expected to assist in resolving the disability issue. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir.1997). Mere sensitivity about loss of ability to perform certain chores, however, does not even approach the level of a mental or emotional impairment as defined by SSA regulations. *Jones v Bowen,* 829 F.2d 524, 256 (5th Cir. 1987) (citing *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th

9

Cir.1987) (citing 20 CFR Subpart P, App. 1, Listing 12.00)).

I find that the record in this case does not establish a reasonable possibility of a mental impairment that would have obliged the ALJ to order a psychological consultative examination. Dr. McGuire's record is actually quite positive, noting that Plaintiff has his attitude under very good control most of the time. Similarly, the evidence regarding Plaintiff's efforts to stop drinking, that he thinks about having a drink each day, does not establish a reasonable possibility of disability.

Nor did Plaintiff's testimony about his hearing problems impose an obligation on the ALJ to request a consultative examination. An impairment of longstanding duration, which has not precluded the performance of gainful employment and which has not worsened in severity, cannot serve as a basis for a finding of disability. See *Smith v. Chater*, 959 F.Supp. 1142 (W.D.Mo. 1997) (when a claimant has worked with an impairment over a period of years, it cannot be considered currently disabling without a showing that a significant deterioration has occurred); *Dixon v. Sullivan*, 905 F.2d 237 (8th Cir. 1990); *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992). Although Plaintiff might have some difficulty understanding loudspeaker announcements at May's Lumber, it is apparent from his testimony and his work history that he has made appropriate accommodations. Plaintiff did not offer testimony that his hearing problems had worsened. Accordingly, failure to order a consultative examination in this area was not error.

## V. Conclusion and Summary

In sum, I find that the ALJ's determination that Plaintiff retains the residual functional capacity to perform substantially all of the exertional requirements of a full range of light work to be supported by substantial evidence. Specifically, I find that Plaintiff's allegations of error are unfounded, and that the ALJ's credibility determination was legally sound and supported by substantial evidence. Further,

I find that the ALJ was under no obligation to order consultative examinations either for Plaintiff's mental status or hearing problems.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing [docket #13] is **DENIED,** and the ALJ's decision is affirmed.  A judgment will be entered in accordance  with this Memorandum Opinion and Order.

_____
**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**